**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:

Melissa A. Passerella,                    Chapter 13
                                          Case No. 09-20599 (RTL)


            Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

TEICH GROH
Carol L. Knowlton, Esq.
Attorneys for Debtor

McGOVERN LEGAL SERVICES, LLC
Michael R. Polulak, Esq.
Attorneys for Society Hill at Hamilton II
   Condominium Association, Inc.

**RAYMOND T. LYONS, U.S.B.J.**

In this Chapter 13 bankruptcy proceeding, Debtor Melissa A. Passerella seeks to reduce or modify Claim No. 8 in the claims register, filed by Creditor Society Hill at Hamilton II Condominium Association, Inc., in the amount of $4,688.14. This claim represents post-petition arrearages in association maintenance fees, plus late fees, administrative fees, and attorneys' fees. Debtor argues that the late fees and attorneys' fees are unreasonable.

1

Because New Jersey state law expressly permits a condominium association to assess late fees, the late fees at issue are presumptively reasonable. As Debtor has failed to overcome this presumption of reasonableness, the late fees are allowable in the full amount claimed.

Because (1) Creditor was successful in litigating the stay relief motion giving rise to the attorneys' fees and (2) the Third Circuit has rejected fee reductions based solely on lack of proportionality with the underlying recovery, the attorneys' fees are allowed, but adjusted for one duplicative charge.

## I.   JURISDICTION

The Court has jurisdiction over this Chapter 13 case under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all proceedings arising under Title 11 of the United States Code, or arising in or related to a case under Title 11, to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), relating to allowance or disallowance of claims against the estate.

## II.   FACTUAL AND PROCEDURAL HISTORY

Ms. Passerella lives in a condominium apartment. As the owner of the condominium, Ms. Passerella is a member of Creditor Society Hill at Hamilton II Condominium Association, Inc. ("the Association") and is liable for a monthly maintenance assessment of $56.53. Because Ms. Passerella's condominium is designated as one of 80 affordable units, her monthly assessment is approximately 1/3 of the amount paid by market unit owners.

Ms. Passerella filed a Chapter 13 bankruptcy petition on April 28, 2009. In June of 2010, the Association moved for relief from the automatic stay in order to collect post-petition

maintenance fees that Ms. Passerella had not paid since filing. At that time, the Association claimed post-petition arrearages of $791.42 (representing unpaid assessments of $56.53 monthly for the 14 months from May 2009 through June 2010), plus late fees, fines, and attorneys' fees. Ms. Passerella opposed the stay relief motion.

At hearing on the stay relief motion, the Chapter 13 Standing Trustee suggested that Ms. Passerella might pay off these arrearages by "rolling them into" her Chapter 13 plan as an administrative claim. The parties agreed and submitted a consent order to that effect, allowing the Association to file an administrative claim for post-petition arrearages, late fees, and attorneys' fees and costs. The consent order preserved Ms. Passerella's right to challenge the reasonableness of these fees. As a final matter, the consent order also provided that the automatic stay continued upon the condition that Ms. Passerella remain current with her condominium fees starting in September 2010.

In October 2010, the Association filed their claim in the amount of $4,688.14, representing $3,556.62 in attorneys' fees and $1,131.52 in arrearages, late fees, and other charges. As exhibits to its Proof of Claim, the Association provided invoices accounting for the attorneys' fees. These invoices show charges incurred for services related to collection of unpaid condominium fees, including the stay relief motion discussed above.

The $1,131.52 in arrearages and fees can be further broken down as follows:

1) $766.42[1] in post-petition arrearages from May 2009 through August 2010;
2) $40.00 in administrative fees;
3) $350.00 in late fees, at $25.00 per month for 14 months[2] of late payments;

---

[1] This figure represents the $791.42 in arrearages claimed as of the June 2010 stay relief motion, plus an unpaid assessment of $56.53 for the month of August 2010, less a May 2009 payment in the amount of $81.53. Ms Passerella paid her July 2010 assessment on time.

3

4) (\$25.00)[3] in over-payment of assessments from September 2010 through October 2010; and
5) \$0.10 in what appears to be a data entry error in reversing a credit; the credit reversal related to a check that was later returned for insufficient funds.

Ms. Passerella now objects to the proportionality and reasonableness of the late fees and attorneys' fees, seeking to have the Association's claims reduced with respect to these charges. The Association opposes, arguing that the claims are reasonable and citing paragraph 5.11 of the Association's Master Deed. Subparagraph I of that section provides the Board of Trustees with the power

> to collect delinquent penalties, fines, levies or assessments made by the Association through the Board of Trustees against any dwelling units and the respective owners thereof, together with such costs and expenses incurred in connection therewith, including, but not limited to, court costs and attorneys' fees . . . .

Ms. Passerella also argues that the Association was unsuccessful in pursuing litigation and that the fees are grossly disproportionate to the amount of the underlying debt.

## III.  DISCUSSION

### a. Late Fees

The propriety of the late fees is best determined by a stipulated damages analysis, which distinguishes between enforceable liquidated damages provisions and unenforceable penalty provisions. *See Metlife Capital Fin. Corp. v. Wash. Ave. Assocs. L.P.*, 732 A.2d 493, 498 (N.J. 1999).

In *Metlife*, the New Jersey Supreme Court acknowledged the old common-law standard,

---

[2]  The 14 months include every month from the first post-petition month (May 2009) through the last month before Ms. Passerella commenced payments pursuant to the consent order (August 2010) other than the two months in which she made payments – May 2009 and July 2010, *see supra* note 1.

[3]  Ms. Passerella made two payments on September 7, 2010 – one for \$56.53 and another for \$81.53.

4

under which a liquidated damages provision was enforceable only if the damage amount was a "reasonable forecast of just compensation for the harm that is caused by the breach" and "the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation." *Id*. However, the *Metlife* court also recognized that modern courts have begun to treat this two-pronged test as more of a "continuum," a flexible test in which reasonableness is the "touchstone." *Id*. at 498-99. Under this test, "the difficulty in assessing damages, intention of the parties, the actual damages sustained, and the bargaining power of the parties all affect the validity of a stipulated damages clause." *Id*. at 499. Ultimately, the *Metlife* court held that "liquidated damages provisions in a commercial contract between sophisticated parties are presumptively reasonable and the party challenging the clause bears the burden of proving its unreasonableness." *Id*.

Here, the Master Deed does not represent such a contract, but the authority to assess late fees is expressly granted to condominium associations by New Jersey law. Specifically, in the statutes dealing with such associations, N.J. STAT. § 46:8B-15(e) provides that an association

> may levy and collect assessments duly made by the association for a share of common expenses or otherwise, including any other moneys duly owed the association, upon proper notice to the appropriate unit owner, *together with interest thereon, late fees and reasonable attorneys' fees*, if authorized by the master deed or bylaws.

(emphasis added).[4]

---

[4] The law was not always thus. The cited section was added by amendment in 1996. 1996 N.J. Laws 79. Prior to 1996, the only discussion of fees on assessments was found in N.J. STAT. § 46:8B-17, which provided only for interest. At least one court found that this statute precluded late fees, but endorsed the concept nonetheless:

> The New Jersey Condominium Act provides the remedy for failure to pay common expenses: the amount of the common expenses together with interest thereon and, if

5

Here, the Master Deed clearly authorizes the imposition of late fees, and the Association's board of directors has set this fee at $25. Additionally, while the statute expressly requires attorneys' fees to be "reasonable," it imposes no such requirement on late fees. This statute represents a legislative determination that late fees are reasonable in the context of condominium association maintenance fees. For these reasons, the Association's late fees are entitled to the same presumption of reasonableness as the New Jersey Supreme Court applied to the stipulated damage clause in the commercial contract in *Metlife*.

Ms. Passerella alleges that the late fee is unreasonable because it is assessed in the same amount regardless of the amount of the maintenance fee assessment due. She notes that the Master Deed and bylaws provide that maintenance fees for owners of affordable units be assessed at approximately 1/3 of the fees assessed on owners of market units, yet the Association imposes the same $25 late fee on owners of both types of units.

This argument is insufficient to overcome the presumption of reasonableness. Here, the $25 late fee is *de minimis* in absolute terms. To be sure, the *Metlife* court disagreed with the Appellate Division's conclusion that "the damages resulting from a late payment would not vary with the amount due." 732 A.2d at 500. However, that case involved commercial loans and

---

> authorized by the master deed or by-laws, reasonable attorneys fees. The Act does not permit an association to levy fines or impose penalties and late fees for the failure to pay common expenses. . . . The court's unwillingness to permit the imposition of late charges is based solely upon the lack of statutory authority. . . . Nevertheless, the court endorses the concept of late charges in the condominium context.

*Holbert v. Great Gorge Vill. S. Condo. Council*, 656 A.2d 1315, 1318-19 (N.J. Super. Ct. Ch. Div. 1994) (internal citations omitted).

The amended version of N.J. STAT. § 46:8B-15(e) has superseded this result.

payments of much greater value. *See id.* at 495 (noting that the appeal involved a $1.5 million loan). While a flat late fee does not make sense for large payments such as the ones in *Metlife*, there must surely be a floor at which the administrative costs associated with late payments cease to decline in tandem with the value of the late payment.

Here, the late fee is $25 on an already-discounted monthly assessment of $56.53. Ms. Passerella argues that a more appropriate fee would be 1/3 of the late fee charged to market units, or a little more than $8. This argument fails to address whether the $25 represents a reasonable estimate of the baseline administrative costs associated with a late payment of any amount. For this reason, the argument fails to rebut the presumption of reasonableness, and the late fees are allowed in their full amount.

### b. Attorneys' Fees

#### i. Legal Standards

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . ." *Davis v. Se. Pa. Transp. Auth.*, 735 F. Supp. 158, 161 (E.D. Pa. 1990) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). Attorneys' fees are initially calculated by using the "lodestar" approach, which "is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Student Pub. Interest Research Group v. AT & T Bell Lab.*, 842 F.2d 1436, 1441 (3d Cir. 1988) (citing *Blum v. Stenson*, 465 U.S. 886 (1984); *Hensley*, 461 U.S. 424); *see also In re Szymczak*, 246 B.R. 774, 779 (Bankr. D.N.J. 2000). In the Chapter 13 bankruptcy context, fees associated with routine matters, such as stay relief motions, should be determined on a flat-rate basis. *See In re Szymczak*, 246 B.R. at 780-81.

In determining the reasonableness of fees, courts routinely "employ the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)." *Staiano v. Cain (In re Lan Assocs. XI, L.P.)*, 192 F.3d 109, 123 (3d Cir. 1999). These factors include "the amount involved and the results obtained." *Id*. at 123 n.8.

Where success is limited, a court must exercise its discretion in adjusting rates downward. *Davis*, 735 F. Supp. at 161. However, the amount of recovery is "only one of the factors to be considered by the court in calculating the amount of attorney's fees." *Davis v. Se. Pa. Transp. Auth.*, 924 F.2d 51, 54 (3d Cir. 1991). Thus, the Third Circuit has held on more than once occasion that "it is impermissible for a trial judge to make a reduction in the attorney's fee solely on the basis of proportionality to the damage award." *Id.* at 55.

### ii. Analysis

As with the late fees discussed above, the Association is authorized to collect reasonable attorneys' fees incurred for collecting Ms. Passerella's unpaid condominium fees and late charges. This power is allowed to condominium associations by N.J. STAT. § 46:8B-15(e) and granted by the Master Deed.

As to Ms. Passerella's argument that the Association was unsuccessful in pursuing litigation; she is mistaken. The Association's stay relief motion asked for "relief from the automatic stay to pursue its foreclosure and other state court actions." In the consent order resolving that motion, the parties agreed that the Association was entitled to claim post-petition arrearages, late fees, and attorneys' fees and costs; further, the parties agreed that the Association should be afforded relief from the automatic stay in the event that Ms. Passerella should miss a condominium fee payment after September 2010. The clause conditioning the stay represents

success on the Association's stay relief motion; indeed, 11 U.S.C. § 362(d) expressly lists conditioning the stay as a manner of granting relief from the stay. Thus, the Association vindicated its right to collect past post-petition fees and associated costs, and it protected its right to enforce payment of future fees.

Ms. Passerella also argues that the Association intended to evict her, and that it failed in that endeavor. However, the stay relief motion did not seek this remedy. To the extent that the Association sought an ultimate eviction, the consent order facilitated the right to pursue this remedy in the future, by allowing stay relief upon certification of default. Thus, the Association's litigation did much to advance their goal of collecting on Ms. Passerella's obligations, and it cannot be characterized as anything less than successful.

Furthermore, while Ms. Passerella correctly notes that the Association's claim is for an amount much smaller than the attorneys' fees incurred, proportionality alone is no reason to reduce a fee award.[5] The fees claimed in the Association's proof of claim represent a proper calculation of a reasonable market rate multiplied by the number of hours reasonably expended on the matters. They also include a flat-fee for a routine service – a stay relief motion. However, the hourly billing records also contain charges for 2 appearances on that motion, first for 2.3 hours and then for 3.7 hours, at an hourly rate of $190. The court finds that the flat fee should include one court

---

[5] Indeed, when courts have reduced fee awards for lack of proportionality, this outcome has been related more to lack of success than to any proportionality requirement. These cases typically involve plaintiffs who win damage awards much smaller than the amount they initially sought. *E.g.*, *Farrar v. Hobby*, 506 U.S. 103 (1992) (nominal damages awarded on a claim for $17 million); *Davis v. Se. Pa. Transp. Auth.*, 924 F.2d 51, 55 (3d Cir. 1991) ($10,000 award on $611,000 in claims). That is, these cases turn more on proportionality between the amount claimed and the amount awarded, rather than proportionality between attorneys' fees and either the amount claimed or the amount awarded. Here, the Association's initial claim was small, but that claim was allowed in full.

appearance, meaning that the billing for the first is duplicative. Thus, all of the Association's attorneys' fees, with the exception of the $437 charged for the first court appearance, are allowed.

In closing, the court acknowledges that the Association incurred legal fees amounting to at least 3 times the amount of their underlying claim. However, the Association's actions here are not as reprehensible as these numbers might suggest. Faced with a member who fails to pay her share of common expenses, a condominium association's other members would be required to make up for the shortfall. Should an association decline to take legal action, non-payment might continue indefinitely. Indeed, perhaps other members would stop making payments, especially when those payments increase on account of "free-riders." Enforcement against non-payers is the best way to avoid this sort of unraveling. Yet the costs of legal action often exceed the amount of common fees payments.[6] Should an association be required to defer legal action until the accumulated arrearages of a non-paying member exceed the projected litigation costs? The fee-shifting provisions of N.J. STAT. § 46:8B-15(e) evince a legislative intent to the contrary. Fee-shifting statutes typically exist to ensure the enforcement of rights that might go unenforced under the traditional American Rule, where parties bear their own counsel fees. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) ("Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation."). Thus, the fee-shifting statute here suggests the intent to make early collection of arrearages an economically rational option. To reduce the fee award due to a lack of proportionality with the underlying claim for arrearages would contravene this legislative intent. *See id.*

---

[6] Indeed, a condominium association is a corporate entity, meaning that it may not appear *pro se*; in order to participate in court proceedings, it must incur the expense of hiring counsel.

## IV.    CONCLUSION

For the reasons outlined above, the Association's claims for $1,131.52 in arrearages, late fees, and other charges are allowed in full, and the claims for attorneys' fees are allowed in the amount of $3,119.62.

Dated:  January 5, 2011                      **/S/Raymond T. Lyons**
                                                     United States Bankruptcy Judge